# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

September 29, 2025

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

| | |
|---|---|
| **JONATHAN KASTENBAUM,** <br> **AS ADMINISTRATOR OF THE** <br> **ESTATE OF SHARON WINEK,** <br> **deceased,** <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON COUNTY SHERIFF** <br> **BLAKE ANDIS, in both his official and** <br> **personal capacities, et al.,** <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:24CV00054 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

| | |
|---|---|
| **JONATHAN KASTENBAUM,** <br> **AS ADMINISTRATOR OF THE** <br> **ESTATE OF SHARON WINEK,** <br> **deceased,** <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON COUNTY SHERIFF** <br> **BLAKE ANDIS, in both his official and** <br> **personal capacities, et al.,** <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:24CV00055 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# OPINION AND ORDER

*Ashley T. Davis, MICHIEHAMLETT, Charlottesville, Virginia, for Plaintiff;*
*Nathan H. Schnetzler, FRITH ANDERSON + PEAKE, P.C., Roanoke, Virginia, for*
*Defendant Sheriff Blake Andis; Blaire H. O'Brien, HARMAN, CLAYTOR, CORRIGAN &*
*WELLMAN, Richmond, Virginia, for Defendant William Smarr.*

Austin Lee Edwards, a recently hired deputy of the Sheriff of Washington County, Virginia, Blake Andis, had developed an online relationship with a teenage girl in California who believed him to be a teenaged boy.  In November 2022, he drove from Virginia to her home, and posing as a police officer, gained entrance to the residence and murdered her mother and grandparents before abducting the young girl.  Edwards eventually killed himself and the girl was rescued.  As a result of these events, Jonathan Kastenbaum, the administrator of the estates of the deceased grandparents, Sharon Winek and Mark Winek, has filed similar actions against Sheriff Andis and his employee Detective William Smarr, asserting claims under 42 U.S.C. § 1983 and Virginia law based on allegations that Edwards was insufficiently screened before being hired.  It is contended that had Edwards' application been properly considered or easily available information about him been obtained and considered, he would have not been hired, and the tragic events would not have occurred. [1]

---

[1]  The administrator of Edwards' estate is also a defendant in each case, but while served with process, has not appeared or filed a response.

Sheriff Andis and Detective Smarr have each filed Motions to Dismiss, alleging both a lack of subject-matter jurisdiction and a failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). For the reasons that follow, Andis' and Smarr's Motions to Dismiss will be granted in part and denied in part.[2]

## I. FACTS ALLEGED.

The following facts are alleged in the Complaints and must be taken as true for the purposes of these Motions to Dismiss.

Austin Lee Edwards worked as a Virginia State Trooper from January 2022 until his resignation on October 28, 2022. In November 2022, he applied for employment with Sheriff Andis. Edwards' application listed three references. However, Edwards failed to respond to several application questions, including whether he had a weapons permit, whether he had been convicted of a crime, whether he had been questioned by law enforcement, whether he had ever been detained, whether he had ever acted violently toward another person, and whether he had ever been the subject of a civil restraining order, protection order, or contact order. Sheriff Andis' policies and procedures required that applicants respond to these questions.

---

[2] I have dispensed with oral argument because the factual allegations and arguments are adequately presented in the materials before the Court, and a hearing would not significantly aid the decisional process.

Several years before he applied, Edwards had been taken into custody following a psychiatric episode during which he injured himself and threatened to kill both himself and his father. A Virginia court approved Edwards' temporary detention in a psychiatric facility. A court also issued a treatment order that barred Edwards from purchasing, possessing, or transporting firearms. The court sent the order to the Virginia Central Criminal Records Exchange (CCRE). In accordance with Virginia law, Edwards was prohibited from possessing a firearm until his gun rights were restored. Edwards' gun rights were never restored.

Detective Smarr, an employee of Sheriff Andis, was tasked with the review of Edwards' application. Smarr never spoke with any of the three references Edwards provided. Smarr did speak with a representative from the Virginia State Police. However, the representative declined to discuss Edwards. Smarr claims that he conducted an FBI record check, as well as checks of the National Crime Information Center, the Virginia Criminal Information Network, and CCRE. The plaintiff contends that Smarr did not check CCRE, and that if he had, he would have discovered that Edwards had been previously detained for psychiatric evaluation.

In addition, Edwards failed the Sheriff's administered polygraph examination. The Sheriff's policies and procedures mandated that applicants pass a polygraph examination or show a reasonable explanation as to the applicant's failure, but no such explanation was provided.

– 4 –

Despite the omissions in Edwards' application and the lack of information from references, Edwards was hired by Sheriff Andis as a deputy on November 16, 2022. He was issued a badge and a service weapon, in violation of the judicial order prohibiting Edwards from possessing a gun.

On November 25, 2022, fewer than two weeks after Edwards began work, he traveled to Riverside, California. Previously, Edwards had created a false online profile in which he had posed as a 17-year-old boy (Edwards was actually 28). Using this profile, he had met R.K.W., a 15-year-old girl living in Riverside. Edwards had been communicating with R.K.W. during the summer and fall of 2022 and had learned of her home address.

When Edwards arrived at R.K.W.'s residence, Sharon and Mark Winek, R.K.W.'s grandparents, were the only persons home at the time, and Edwards showed them his badge and issued service weapon. He claimed he was conducting an investigation as a law enforcement officer and needed entry. Edwards then directed Sharon to call Brooke Winek, Sharon's daughter and R.K.W.'s mother, and inform Brooke that she and R.K.W. needed to return home immediately because a detective had come to the home to discuss an incident involving R.K.W. At Edwards' instruction, Sharon then called Brooke's sister and told her to remind Brooke to leave her mobile phone and R.K.W. in the car, so that Edwards could

question Brooke and R.K.W. separately.  When Brooke arrived, she followed those instructions and went inside, leaving R.K.W. and her mobile phone in the car.

After waiting for some time, R.K.W. entered the home to find her grandparents and mother on the floor, bound with bags tied over their heads. Edwards pulled R.K.W. into his car at gunpoint and set fire to the home.  Edwards then began driving back towards Virginia.  Law enforcement eventually chased Edwards down and Edwards allowed R.K.W. to get out of the car.  Edwards then killed himself with his service weapon.  R.K.W. was not physically injured.  Sharon, Mark, and Brooke Winek died at Edwards' hands.

## II. STANDARD OF REVIEW.

When a party moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the court must address the question of subject matter jurisdiction first. *Bell v. Hood*, 327 U.S. 678, 682 (1946).  The party asserting federal jurisdiction bears the burden of proving jurisdiction.  *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  A district court must grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.* at 768.

Eleventh Amendment "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign

– 6 –

immunity must dismiss the action for lack of subject-matter jurisdiction."
*Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)
(citation omitted). Such immunity extends not only to states, but also to state agents
and instrumentalities, otherwise known as "arm[s] of the state." *Cash v. Granville
Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a
complaint to determine whether the plaintiff has properly stated a claim, but "it does
not resolve contests surrounding the facts, the merits of a claim, or the applicability
of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).
In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in
the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a
motion to dismiss, a complaint must contain "only enough facts to state a claim to
relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007). A claim is plausible if the complaint contains "factual content that allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged," and if there is "more than a sheer possibility that a defendant
has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.  SUFFICIENCY OF THE ALLEGATIONS.

As noted, there are separate Complaints on behalf of Sharon and Mark Winek, which have been considered together for the purposes of this Opinion.  The Counts in each Complaint are similar and allege the same set of facts.[3]

A.  Official Capacity Claims.

Andis and Smarr assert that sovereign immunity bars claims against them in their official capacities.  I agree.

Official capacity suits are another way of suing the entity itself.  *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000).  In Virginia, suits against a sheriff acting in his official capacity for money damages is a suit against the Commonwealth, entitling the sheriff to immunity.  *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).  Under Virginia law, a division of a government entity cannot be sued unless the legislature has vested it with the capacity to be sued.  *Graves v. Austin*, No. 4:12-CV-21, 2012 WL 6019099, at *3 (W.D. Va. Dec. 3, 2012).  The Code of Virginia does not provide that a sheriff is a separate legal entity that can be sued.  *Trantham v. Henry Cnty. Sheriff's Off.*, No. 4:10CV00058, 2011 WL 863498, at *5 (W.D. Va. Mar. 10, 2011) ("Local police and sheriff's departments in Virginia are 'non suis

---

[3]  Where I refer to the plaintiff, I am referring to Administrator Jonathan Kastenbaum in both of the cases

– 8 –

juris,' meaning they simply do not have the capacity to be sued."), *aff'd*, 435 F. App'x 230 (4th Cir. 2011) (unpublished).

Because suits against Virginia sheriffs or their deputies are considered suits against the Commonwealth, any claims against Andis or Smarr in their official capacities must be dismissed. *Bell v. City of Roanoke Sheriff's Off.*, No. 7:09-CV-00214, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009) ("It is well settled that, in Virginia, suits against a Sheriff or her deputies in their official capacities, as well as suits against the Sheriff's Office, are considered suits against the state.").

### B. Ordinary Negligence Claims.

The plaintiff brings claims against Andis and Smarr for negligence, negligent hiring, negligent entrustment, and negligence per se. He also brings a claim for negligent retention against Andis only. Andis and Smarr argue that sovereign immunity bars ordinary negligence claims against them. I agree.

"[O]rdinary negligence claims cannot lie against a law enforcement officer who was engaged in an essential governmental function involving the exercise of discretion and judgment at the time of the act alleged to be negligent." *Savage v. Cnty. of Stafford*, 754 F. Supp. 2d 809, 817 (E.D. Va. 2010) (internal quotation marks and citation omitted). To determine whether sovereign immunity applies under Virginia law, courts apply a four-factor test. The factors are (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the

function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *Verry v. Barry*, No. 2005-7454, 2006 WL 2578368, at *2 (Va. Cir. Ct. July 27, 2006) (citing *Messina v. Burden*, 321 S.E. 2d 657, 663 (Va. 1984)).

Smarr cites *Niese v. City of Alexandria* for the proposition that "the maintenance of a police force is a governmental function." 564 S.E.2d 127, 133 (Va. 2002). However, *Niese* concerned the immunity of a local municipality, not a sheriff. Therefore, the *Niese* court's determination that the hiring and firing of police officers is a governmental function is not dispositive here. *Verry*, 2006 WL 2578368, at *3 ("[B]ecause we must apply different analytical tests in these differing contexts, the extension of sovereign immunity protection to a local municipality by *Niese* has no real effect on our analysis of a Constitutional officer, such as Sheriff Barry."). To determine whether Andis and Smarr enjoy sovereign immunity as to the ordinary negligence claims, I will consider the four-factor test set forth above.

The function performed here is the screening and hiring of a deputy. Although the state has an interest in a qualified Sheriff's office, nothing here indicates that the Commonwealth of Virginia was involved in the hiring process or that other state employees had control over the ultimate hiring decision. The allegations in the Complaints indicate that Smarr was responsible for the background check process and was tasked with making determinations about Edwards' fitness, which requires

the use of judgment and discretion.  Indeed, allegations of Andis' and Smarr's poor judgment form a foundation of this lawsuit.

The plaintiff argues that the hiring at issue here was not discretionary because the Sheriff was prohibited from employing Edwards under both Virginia law and non-discretionary Sheriff's policies.  Thus, he claims that sovereign immunity does not shield Andis or Smarr from ordinary negligence claims regarding their decision to hire Edwards.  However, though some of the hiring standards at issue are mandatory, the plaintiff's claims still arise out of the hiring decision itself.  It is therefore necessary to construe the claims as arising out of a government function requiring the exercise of discretion.  The standards and policies that the plaintiff mentions may be relevant to the ultimate determination of the reasonableness of Andis's and Smarr's conduct, but they do not change the fact that the plaintiff's ordinary negligence claims concern a sheriff's hiring decision.  Because Andis and Smarr made the determination to hire Edwards with limited state involvement, they are entitled to sovereign immunity as to the ordinary negligence claims in the Complaints.

### C.  Remaining Claims Against Sheriff Andis.

### i.  Count I: Deliberate Indifference Under 42 U.S.C. § 1983.

The plaintiff asserts claims against Andis under 42 U.S.C. § 1983, alleging that Andis was deliberately indifferent to an obvious consequence of his failure to

screen and supervise Edwards properly. As discussed above, because sheriffs in Virginia are immune to official capacity suits, I will construe this claim as one against Andis in his individual capacity only.

A claim under 42 U.S.C. § 1983 requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997). A § 1983 failure to screen claim based on a "single hiring decision" is only viable if the employer "was deliberately indifferent towards how its hiring decision could lead to a deprivation of federal rights." *Tupea v. Kline*, 736 F. Supp. 3d 381, 386 (E.D. Va. 2024) (internal quotation marks and citations omitted). A failure to conduct an adequate background check can constitute deliberate indifference "'where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.'" *Slone ex rel. Est. of Hudson v. Racer*, No. 3:23-0636, 2024 WL 4314898, at *7 (S.D.W. Va. Sept. 26, 2024) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997).

To ensure that liability for a hiring decision does not "collaps[e] into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of Cnty.*

*Comm'rs of Bryan Cnty.,* 520 U.S. at 410.  Liability depends "on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  *Id.* at 412.  The "mere probability that any officer inadequately screened will inflict any constitutional injury" does not suffice.  *Id.*

Regarding Andis' alleged failure to screen, the plaintiff argues that the abuse and murders of Sharon and Mark Winek were "plainly obvious consequence[s] of hiring and failing to supervise Edwards."  Mem. Opp'n Mot. Dismiss 9, Dkt. No. 26 (1:24CV00055).  However, the connection between Andis' hiring decision and the acts Edwards undertook is not strong enough to state a § 1983 claim.  While Edwards was certainly not qualified to work as a deputy, the specific decision to hire him was not highly likely to lead specifically to the circumstances of the murders and abduction here.  Thus, the strong nexus between the act taken under color of state law and the particular constitutional injury inflicted is not present here.

The plaintiff's allegation of insufficient supervision also fails due to Andis' lack of knowledge of Edwards' behavior.  The test for supervisory liability under § 1983 is a stringent one, involving three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury; (2) that the supervisor's response was so inadequate as to show deliberate indifference or tacit authorization; and (3) that there was a causal link between the supervisor's inaction and the plaintiff's constitutional

injury. *Shaw ex rel. Est. of Bowen v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994).  A properly pled claim for supervisory liability must go beyond a theory that the superior is liable merely by virtue of his office.  Rather, the allegations must be sufficient to demonstrate a plausible nexus or affirmative link between the supervisor's actions and the constitutional deprivation.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130–31 (3d Cir. 2010).

Here, although the plaintiff alleges that Edwards' supervisors became aware of Edwards' online communication with minors, he does not allege that Andis himself knew or should have known of this conduct.  There are no facts to suggest that the supervisors took any steps to inform Andis of Edwards' behavior or that Andis was ever able to observe it himself.  Therefore, Kastenbaum's § 1983 claim against Andis under a theory of improper supervision fails.  Andis' motions to dismiss regarding the § 1983 failure to supervise in Count I are therefore granted.

> *ii. Count VII: Negligence and Gross Negligence; Count VIII: Negligent and Grossly Negligent Retention; Count IX: Negligent and Grossly Negligent Entrustment; Count X: Negligence and Gross Negligence Per Se; Count XI: Willful and Wanton Negligence.*

The plaintiff brings claims for negligence and gross negligence, negligent and grossly negligent retention, negligent and grossly negligent entrustment, negligence and gross negligence per se, and willful and wanton negligence against Andis.

– 14 –

Because Andis is immune from ordinary negligence claims, I will consider only claims involving gross negligence or willful and wanton negligence.

Under Virginia law, a government agent who is entitled to sovereign immunity is not completely immune from civil suit. *Colby v. Boyden*, 400 S.E.2d 184, 186 (Va. 1991). Sovereign immunity will not protect an agent whose actions were a degree of negligence beyond ordinary negligence. Gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). "This requires a degree of negligence that would shock fair-minded persons." *Id.* Several negligent acts may combine to amount to gross negligence. *Kennedy v. McElroy*, 81 S.E.2d 436, 439 (Va. 1954).

A negligent hiring claim "is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." *Interim Pers. of Cent. Va., Inc. v. Messer*, 559 S.E.2d 704, 707 (Va. 2002).

First, as Sheriff, Andis held the ultimate authority for all hiring decisions and had a duty to exercise care in that process. In his briefing, Andis argues that the

plaintiff has not pled any facts showing that Andis participated in the background screening or was aware of the processes used.

The plaintiff cites Va. Code Ann. § 15.2-1705, which outlines the minimum qualifications and screening for potential sheriff's deputies. Among other requirements, section 15.2-1705 instructs that only the sheriff can request that the Department of Criminal Justice Services waive a requirement in the hiring of a deputy. This suggests that Andis, as sheriff, had a responsibility to ensure that Virginia law was met in the hiring of deputies. Although Smarr conducted the background check, it is Andis who had to make an ultimate determination as to whether Edwards could be hired. Andis allegedly failed to review Edwards' inadequate materials and hired him anyway.

Second, considering available information that Edwards was an unqualified and dangerous individual, a jury could find that Andis' decision to hire him indicates a disregard for the safety of others. According to the plaintiff, a straightforward records check would have revealed the revocation of Edwards' gun rights. Further, the large sections of Edwards' application that were left blank would have been apparent upon a cursory review. Andis contends that even if he and Smarr failed to conduct a proper background check of Edwards, it was reasonable for them to rely on Edwards' previous employment with the Virginia State Police. However, section15.2-1705 makes no exception to its standards for the screenings of former

state troopers. A jury could determine that a failure to review Edwards' background before offering him a position and providing him with a firearm was unreasonable regardless of his past employment. Therefore, the reasonableness of reliance on Edwards position as a state trooper is a question best left to the jury.

Finally, to state a claim for grossly negligent hiring, the plaintiff must demonstrate "that the employer's negligence in hiring . . . the employee was both a cause-in-fact of the plaintiff's injury and that the plaintiff's injury was a foreseeable consequence of the employer's negligence." 25 Kristine Cordier Karnezis, *Causes of Action* 99 (2d. 2025). Proximate cause is "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009). There may be "more than one proximate cause" for an injury. *Id.*

Proximate cause is "ordinarily [a] question[] of fact for the jury's determination." *Dorman v. State Indus., Inc.*, 787 S.E.2d 132, 138 (Va. 2016). The issue of proximate cause only becomes a question of law when viewing the evidence reasonable minds cannot differ as to the result. *Scott v. Simms*, 51 S.E.2d 250, 253 (Va. 1949).

Regarding but-for causation, the plaintiff argues that if Andis had not hired Edwards, Edwards could not have committed his crimes. Given that Edwards was

legally prohibited from owning a gun, Andis' decision to hire Edwards gave him possession of a weapon he could not have obtained legally, and in view of Edwards' background, his efforts to legally obtain a firearm may have been difficult if not impossible.   Edwards then used his badge and this firearm to gain the trust of the Wineks and kidnap R.K.W.

Regarding foreseeability, the plaintiff has sufficiently alleged that available background information should have indicated that Edwards would use the position to harm others.   As discussed above, the plaintiff's § 1983 claims fail because the hiring decision cannot be said to have resulted in the particular injuries that occurred. I find that the connection to a specific injury under Virginia state negligence law is not so exacting.   Edwards had a record of psychiatric instability and past violence. A jury could find that providing a weapon to someone whose gun rights were revoked would make injury or death to others foreseeable.

Because the hiring decision also implicated the provision of firearms to an unfit person and violated Virginia law, the plaintiff has also stated colorable claims for grossly negligent entrustment and gross negligence per se.   Thus, Motions to Dismiss regarding claims of gross negligence, grossly negligent entrustment, and gross negligence per se are denied.

In addition, the plaintiff alleges that Andis acted willfully and wantonly when hiring Edwards.   Willful and wanton negligence is the most severe form of

negligence because the defendant is aware, based on his knowledge of the circumstances and conditions, that his conduct would probably cause injury to another. *Cowan*, 603 S.E.2d at 918–19. One consciously acts or fails to act with reckless disregard for the other person's rights, "or act[s] with reckless indifference to the consequences" despite his awareness of the circumstances. *Id.*

The plaintiff does not provide facts showing that Andis was subjectively aware of the risks Edwards posed if hired. While he may have acted with disregard for the rights of others in failing to review it, nothing indicates than Andis acted with knowledge of the underlying circumstances. Thus, Andis' Motions to Dismiss regarding Count XI are granted.

### iii. Count XII: Vicarious Liability.

Vicarious liability is a superior's automatic liability for the unlawful actions of subordinates, irrespective of the superior's culpability. In Virginia, "[t]he acts and defaults of the deputy . . . are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself." *Agyeman v. Pierce*, No. LT-1347-4, 1991 WL 835356, at *2 (Va. Cir. Ct. Dec. 11, 1991) (quoting *Mosby v. Mosby*, 50 Va. (9 Gratt.) 584, 603 (1853)). As a result, "a Sheriff may be held responsible for the acts of his deputies." *Verry*, 2006 WL 2578368, at *1. In Virginia, vicarious liability applies based on the actions of a subordinate when "the *service itself*, in which the tortious act was done,

was within the ordinary course of the employer's business, meaning when the employee committed the tort while performing a normal function of his assigned job." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 23 (Va. 2019) (internal quotation marks and citation omitted).

The plaintiff alleges that Andis is vicariously liable for the acts of Smarr, and not the acts of Edwards. Thus, the relevant analysis is whether Smarr's review of Edwards' application was a normal function of his position as a detective. I conclude that it was. Hiring new employees is a standard function of a sheriff. The onboarding of new deputies ultimately serves the goal of a sheriff, bringing the hiring decision within the scope of Andis' liability. Andis' Motion to Dismiss as to Count XII is denied.

### D.   Remaining Claims Against Detective William Smarr.

#### i.   *Count III: Negligence and Gross Negligence.*

The plaintiff alleges that Smarr was negligent and grossly negligent in his background check and hiring of Edwards. As discussed above, because Smarr is immune to claims of ordinary negligence, I will consider whether the plaintiff has sufficiently stated a claim for gross negligence against Smarr. For many of the same reasons that support the gross negligence claim against Andis, I conclude that he has.

As noted, "[a]n employer will be liable for negligent hiring for failing to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." *Beach v. McKenney*, No. 2010-224, 2011 WL 7493433, at *6 (Va. Cir. Ct. Apr. 5, 2011) (citing *Interim Pers. of Cent. Va.*, 559 S.E.2d at 707).

Here, Smarr cleared a deputy that the unreviewed databases would have shown that Edwards was prohibited from even owning a firearm. Edwards' application was rife with red flags that could have led a prudent person to deny him. Edwards left crucial sections blank, including those indicating previous detentions. When Smarr called a Virginia State Police representative, the representative told Smarr that he was not comfortable discussing Edwards, and Smarr went no further. In addition, Edwards had resigned from Virginia State Police, which indicates that there may have been issues with his employment. Smarr failed to inquire into this. Finally, Edwards failed a polygraph, and Smarr failed to seek a reasonable explanation for this failure.

Smarr argues that Edwards' previous position as a Virginia state trooper made it reasonable for him to rely on the expectation that Edwards had been vetted by the state police. As noted above, this is a factual jury question, particularly considering

the allegation that Edwards resigned from the position under uncertain circumstances. Taken together, the absence of care that led to Smarr hiring a deputy struggling with psychiatric issues who had no legal right to a gun could be considered a complete neglect of the safety of others.

Smarr further argues that he could not reasonably have anticipated that Edwards would commit the crimes he did, noting their extreme nature and distance from Edwards' duty station. However, a reasonable jury could find that hiring and arming someone who has threatened to kill others due to psychiatric problems would indicate to a prudent detective that the person would use his position as a deputy to further threaten, harm, or kill others. Less than two weeks after he was hired, Edwards indeed allegedly used his badge and service weapon to gain the trust of Sharon and Mark Winek and enter their home. Providing an unfit officer with a firearm and the appearance of state authority could foreseeably cause them to abuse this authority to commit violent crimes. Smarr's motion to dismiss as to gross negligence in Count III is denied.

### ii. Count IV: Negligent and Grossly Negligent Entrustment.

The plaintiff brings negligent entrustment and grossly negligent entrustment claims against Smarr for providing Edwards with a service weapon and badge. As with previous claims, because sovereign immunity bars ordinary negligence claims against Smarr, I will consider only grossly negligent entrustment in this count.

"The doctrine of negligent entrustment allows an owner of an instrumentality to be held liable to a third party who is injured for entrusting it to another who caused the injury." *Kuhn v. Giampa*, No. CL-2021-8745, 2022 WL 19789844, at *4 (Va. Cir. Ct. Nov. 10, 2022) (citing *Hack v. Nester*, 404 S.E.2d 42, 43 (Va. 1990)). A plaintiff must show that the owner "knew or had reasonable cause to know that he entrusted" the instrumentality to someone "unfit" and "likely to injure others." Adm'r *Est. of Stewardson v. Henderson*, No. CL-22-740, 2024 WL 5454753 at *2 (Va. Cir. Ct. May 26, 2024) (citing Hack, 404 S.E.2d at 43). Smarr has sovereign immunity as to negligent entrustment, so the gross negligence standard, "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person," applies here. *Cowan*, 603 S.E.2d at 918.

Smarr contends that he cannot be held liable for grossly negligent entrustment because he was not the "owner" of the firearm or badge and was not actually aware that Edwards was prohibited from possessing a firearm. Regarding the question of ownership, there is limited caselaw in Virginia holding someone who is not the legal "owner" of an instrumentality liable under a theory of negligent entrustment. The plaintiff cites language in *Stanley v. Williams* explaining that "it is negligent to permit a third person to use a thing . . . which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing

– 23 –

. . . in such a manner as to create an unreasonable risk of harm to others." No. 97-38, 1997 WL 33622330 at *1 (Va. Cir. Ct. June 10, 1997) (quoting Restatement (Second) of Torts § 308). This broad language focuses on control rather than ownership, but the case itself concerns the liability of a co-owner, not simply someone with control over an instrumentality.

Other cases are instructive on the question of ownership. In *Edwards v. McElliotts Trucking*, *LLC*, the defendant argued that it was not liable for negligent entrustment "because it did not own any of the equipment related to the accident." 268 F. Supp. 3d 867, 882 (S.D.W. Va. 2017). The court determined that the defendant could still be held liable because it had exclusive possession and control of the equipment under its lease agreement. *Id.* As a result, I conclude that legal ownership is not required for liability under a theory of negligent entrustment.

The facts in the plaintiff's Complaints do not establish who had control or custody over the badge and firearm before they were provided to Edwards. Even without a strict ownership requirement, the plaintiff must show that Smarr was responsible for issuing badges and service weapons to new deputies. Without some indication that Smarr directly transferred these instrumentalities to Edwards, the entrustment is too attenuated to state a claim.

Smarr also argues that he is not liable because he did not "entrust" the rifle to Edwards. He cites *Kingrey v. Hill* in support of this contention. 425 S.E.2d 798

(Va. 1993). However, in *Kingrey*, the court found that a wife did not entrust a rifle to her husband, who was prohibited from possessing a firearm, because she had not undertaken an "affirmative act or pattern of action establishing implied permission." *Id.* at 799. The rifle was simply in her home. In contrast, the provision of a service weapon and badge to Edwards is an affirmative act that establishes permission for him to use them. Smarr's motion to dismiss as to Count IV is denied.

### iii. Count V: Negligence and Gross Negligence Per Se.

Kastenbaum alleges negligence and gross negligence per se based on Smarr's failure to abide by statutes that prohibited him from hiring Edwards. To establish the elements of negligence per se, the plaintiff must show (1) that the defendants violated a statute enacted for public safety; (2) that the plaintiff belongs to a class of people the statute is intended to protect and the statute was crafted to protect against the type of harm alleged; and (3) that the statutory violation was the proximate cause of the plaintiff's injury. *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 872 (Va. 2011). The first two elements are issues of law for the court while the third is a factual issue for the trier of fact. *Id.*

The plaintiff identifies multiple statutes that Smarr's decision to hire Edwards violated, particularly Va. Code Ann. §§ 15.2-1705, 19.2-389, 18.2-308.2:1, and 18 U.S.C. § 922. Kastenbaum alleges that these laws prohibited Smarr from clearing Edwards until Smarr had received information from the Virginia State Police,

required that Smarr conduct an FBI record check and CCRE check, and prohibited the hiring of Edwards because it was illegal for Edwards to possess a firearm.

The facts in the plaintiff's Complaints sufficiently state conduct of Smarr's that violated these statutes. Further, given the power that law enforcement officers hold, these statutes aim to ensure that only thoroughly vetted individuals are permitted to serve as deputies. They are designed to reduce the risk of harm to the public by preventing badges and firearms from being issued to unfit or dangerous individuals. Smarr argues that the decedents were not within the class of people that the statutes intend to protect, stating "an employing law enforcement agency" is not "a guarantor of the behavior of its officers even when they are off duty and two thousand miles away." Reply Supp. Mot. Dismiss 12, Dkt. No. 29 (1:24CV00055). Though this statement is true, it does not address the plaintiff's allegation that the badge and firearm Edwards received as a deputy enabled him to commit his crimes, thus bringing Kastenbaum's decedents into the class of people to be protected from unfit law enforcement officers. The Sheriff is not a guarantor of any conduct Edwards may have engaged in at any time. Instead, what is at issue is whether a reasonable jury could find that the provision of a badge and firearm sufficiently links these specific crimes to Smarr's decision to hire Edwards. Because proximate cause is a question for the jury, I conclude that Smarr's motion to dismiss as to Count V will be denied.

*iv. Count VI: Willful and Wanton Negligence.*

The plaintiff alleges that Smarr acted willfully and wantonly during his review of Edwards' application and ultimate hiring decision.   Willful and wanton negligence is the most severe form of negligence because the defendant is aware, based on his knowledge of the circumstances and conditions, that his conduct would probably cause injury to another.  *Cowan*, 603 S.E.2d at 918–19.  One consciously acts or fails to act with reckless disregard for the other person's rights, "or act[s] with reckless indifference to the consequences" despite his awareness of the circumstances.  *Id.*

There is nothing in the facts to suggest that Smarr knew of Edwards' psychological problems or was aware that Edwards was prohibited from owning a gun when he completed his background check.  Thus, Smarr's conduct does not rise to the level of awareness of the circumstances required in a willful and wanton negligence claim.  Therefore, Smarr's motion to dismiss as to Count VI is granted.

IV.  Conclusion.

It seems clear from the allegations made in the Complaints that if proved, Edwards' hiring process was seriously flawed.  The more difficult factual question is whether it is likely that those flaws led to the murders.  Under the circumstances, discovery by the parties may shed more light on these circumstances, although I make no prediction as to the ultimate outcome.

For the foregoing reasons, the Motions to Dismiss, Case No. 1:24CV00054, Dkt. Nos. 20 and 22, and Case No. 1:24CV00055, Dkt. Nos. 22 and 24, are GRANTED in part and DENIED in part.  Andis' Motions to Dismiss are granted regarding Count I, XI and all official capacity claims.  His motions are denied as to claims with degrees of negligence higher than ordinary negligence regarding Counts VII, VIII, IX, X, and XII.  Smarr's Motions to Dismiss are granted regarding Count VI.  His motions are denied as to claims with degrees of negligence higher than ordinary negligence regarding Counts III, IV, and V.

It is so **ORDERED**.

ENTER:   September 29, 2025

/s/  JAMES P. JONES
Senior United States District Judge